IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID DISHONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:09CV1139-SRW |
| | ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff David L. Dishong brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

Plaintiff was born on June 7, 1964. (R. 111). He graduated from high school in June 1982 and has worked at various jobs as an auto mechanic, automotive glass technician, and "general worker" at a machine shop. (R. 131, 137, 155). On March 20, 2006, plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that

he stopped working on July 10, 2005, due to diabetes and complications, a seizure disorder, and an undiagnosed mental illness. (R. 130; Exhibits 1D, 2D).[1] In a disability report completed for his appeal, he alleged a "new" condition (since January 1, 2003) of "problems with my knees & back also right shoulder. (R. 174).[2] On April 22, 2008, after the claim was denied at the initial administrative level, an ALJ conducted an administrative hearing. (R. 30-63). At the hearing, plaintiff testified that the impairment or physical condition that keeps him from working is "[t]he neuropathy in my legs and the pain in my back, the spinal stenosis in my back." (R. 41). The ALJ rendered a decision on May 21, 2008. The ALJ concluded that plaintiff suffered from the severe impairments of "insulin-dependent diabetes mellitus, alcohol related seizures, hypotension, chronic alcohol abuse, diabetic and alcoholic neuropathies, degenerative joint disease, spinal stenosis, major depression, alcohol induced mood disorder, and cannabis dependence." (R. 15).[3] He found that plaintiff's impairments,

---

[1] Plaintiff's previous claims for benefits were denied on April 15, 2005, and December 1, 2005. (R. 140-41).

[2] The ALJ's summary of the evidence (R. 15-22) is thorough, and the court will not re-summarize the evidence here. The ALJ's summary is also accurate, except that the ALJ wrote that plaintiff testified that "[h]is back pain becomes as intense as 7 on a 10 point scale," and "lasts 3-4 days at worst" when plaintiff testified that his pain level of "7" is his "average" pain level, and that his pain lasts at its worst level "[o]n average, about three or four days." (R. 25, 42, 51). As plaintiff argues, the ALJ does not mention plaintiff's 2005 lumbar spine MRI; the court addresses that issue below.

[3] Plaintiff was admitted for inpatient treatment in Maryland four times between June 10, 2004, and July 4, 2005, for seizures diagnosed primarily as alcohol-related. However, he was treated with Dilantin. (See Exhibits 2F - 6F). In treatment notes for a September 28, 2006, office visit, after plaintiff moved to Alabama, plaintiff's doctor wrote that plaintiff indicated "no recent seizure activity" and "[gave] the last episode [of an] altered level of consciousness as July 3, 2005." (R. 399). In November 2007, plaintiff told Dr. Combs, the consultative physical examiner, that his last seizure was "about two years ago." (R. 380).

considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On October 23, 2009, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

>The ALJ made the following finding regarding plaintiff's residual functional capacity:
>
>[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)with the following nonexertional limitations: He can frequently use his hand for repetitive action such as in simple grasping and the pushing and pulling of arm controls, and for fine manipulation. He can occasionally use his feet for repetitive movement such as in the pushing and pulling of leg controls. He can occasionally climb, stoop, kneel, crouch, and crawl; and never balance or reach overhead. He can never work around unprotected heights; occasionally work around moving machinery, drive automotive equipment, and exposure to dust, fumes and gases; and occasionally work around exposure to marked changes in temperature and humidity. He experiences a moderate degree of pain. The claimant has a mild inability to respond appropriately to supervision; a mild inability to respond appropriately to co-workers; a mild inability to respond appropriately to customers or the general public; no inability to use judgement in simple 1 or 2 step work related decisions; a mild inability to use judgment in complex work related decisions; no inability to deal with changes in a routine work setting; no inability to understand, remember, or carry out simple instructions; a mild inability to understand, remember, or carry out complex instructions; a mild inability to maintain concentration, persistence, or pace for periods of at least 2 hours; a mild inability to maintain social functioning; and a mild inability to maintain activities of daily living. He does not experience episodes of decompensation, each of extended duration.

(R. 23). He found that plaintiff cannot perform his past relevant work, which was at the medium or heavy level of exertion. The ALJ based his step five finding that plaintiff retains the RFC to perform other jobs existing in significant numbers in the national economy on the testimony of a vocational expert in response to a hypothetical question including all of the limitations expressed above. (R. 27-29; 58-60). The vocational expert was present throughout the hearing and listened to plaintiff's testimony; she testified that, if plaintiff's hearing testimony regarding pain and other limitations were fully credited, plaintiff could not perform his past relevant work or other work existing in the regional or national economies. (R. 55,

58).[4]

The ALJ acknowledged that plaintiff had presented "medical evidence demonstrating that he has impairments that could reasonably be expected to produce some pain and discomfort" (R. 25); he credited plaintiff's testimony regarding pain, but only to the extent that he experiences a moderate degree of pain. (R. 23). The ALJ stated that "the record in its entirety does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged by the claimant." (R. 25). He noted that "[t]here are not any diagnostic studies demonstrating abnormalities that might cause such severe symptoms" and "no evidence of an emotional component likely to produce pain of a psychogenic nature." (Id.). In discounting plaintiff's testimony of disabling limitations, the ALJ also cited plaintiff's daily activities and the opinions of the consultative examiners – Dr. Combs and Dr. Renfro – which the ALJ found to be supported by their clinical examinations. (R. 26). The plaintiff challenges the Commissioner's decision, arguing that the ALJ erred in assessing the plaintiff's credibility because he: (1) discredited plaintiff's testimony based on plaintiff's ability to perform minimal daily activities; and (2) failed to consider an MRI as objective medical evidence supportive of plaintiff's claims.

### Plaintiff's Lumbar Spine MRI

Plaintiff argues that he had an MRI of his lumbar spine in May 2005 and that he

---

[4] For this reason, the ALJ's failure to describe plaintiff's pain testimony accurately – *i.e.*, that he experiences pain at an "average" level of 7 and that it lasts at its worst level for three or four days, on "average" (see n. 2, *supra*) – is harmless.

"submitted" the MRI report in April 2008, after the administrative hearing.[5] In the decision he issued just under one month after the administrative hearing, the ALJ did not acknowledge the MRI report, and counsel's letter and MRI report are not included in the administrative transcript filed by the Commissioner in this action. Plaintiff argues that, "[a]lthough the ALJ summarized the other medical evidence in his decision, he failed to discuss or consider the above-mentioned MRI" and, thus, the ALJ violated his duty to consider all of the available evidence in evaluating plaintiff's claimed symptoms and, also, his duty to state the weight he gave to the evidence. (Plaintiff's brief, p. 11). As noted previously, plaintiff's counsel has not presented the MRI report to this court, nor has he provided evidence regarding where or to whom he sent the documents, the manner of transmission, or any confirmation of receipt. Thus, there is no evidence before this court of the results of plaintiff's MRI or proof that plaintiff submitted it to the ALJ. Plaintiff's argument that the ALJ erred in his treatment

---

[5] A different attorney, but from the same firm as counsel of record in this court, represented plaintiff at the administrative hearing and before the Appeals Council. In the form plaintiff signed on July 27, 2007, appointing a representative to act on his behalf before the Commissioner, plaintiff designated his current attorney as his "main representative." (See R. 4-9, 30, 89, 90, 91). In his brief, plaintiff's counsel writes, "On April 23, 2008, the day following Mr. Dishong's administrative hearing, counsel submitted a Magnetic Resonance Imaging ("MRI") report which Mr. Dishong had undergone on May 20, 2005. In a letter accompanying this report, counsel explained that, after a thorough review of the hearing file provided at the hearing, it was discovered that the MRI report was lacking therein, and it was requested that the ALJ consider the highly probative objective study." (Plaintiff's brief, p. 11). In a footnote, counsel states that the report and letter are attached to his brief (id. at n. 1); however, plaintiff's brief, as filed in this court, includes no attachment. (See Doc. # 12). Plaintiff's counsel may have provided the letter and MRI report to opposing counsel by some means other than the court's electronic filing system, the manner of service indicated in the certificate attached to plaintiff's brief. Indeed, the Commissioner cites the letter and report as attachment A to plaintiff's brief and agrees that the MRI report "revealed that Plaintiff had moderate spinal canal stenosis at L4-L5 due to discogenic disease." (Commissioner's brief, Doc. # 13, p. 4). The court does not doubt counsel's representation that he or another attorney from his firm transmitted the letter and report in some manner to the Social Security office. However, neither the report nor the letter are in the record before the court, either as part of the administrative transcript or as a document filed in this court.

of the MRI evidence must fail on this basis alone.

However, even accepting as true counsel's representation that he "submitted" the evidence before the ALJ issued his decision – and further assuming that counsel sent the documents to the appropriate office, that someone at the office received those documents, and that the documents are as represented in plaintiff's brief – the result is the same. In other words, even if counsel had filed the letter and MRI report in this court, along with evidence of transmission to the ALJ's office, it would not result in reversal of the Commissioner's decision because the record before the ALJ was closed when counsel submitted the MRI report to the ALJ's office, and plaintiff did not submit the evidence to the Appeals Council.

At the administrative hearing, after the conclusion of witness testimony, the ALJ inquired of plaintiff's counsel, "Any other evidence you wish to introduce in this matter at this time?" (R. 62). Counsel responded in the negative. (Id.). The ALJ advised the claimant that he was closing the record at that time and would render a decision. After advising the claimant of his appeal rights, the ALJ asked, "Counsel, do you have anything further for the record?" (R. 62-63). Counsel responded, "No, Your Honor." (R. 63).

Plaintiff's counsel represents that the report was submitted the day following the hearing. (Plaintiff's brief, p. 11). However, plaintiff's attorney asserted no objection when the ALJ announced that he was closing the record and, when the ALJ asked – at the very conclusion of the hearing – whether counsel had "anything further for the record," he told the ALJ that he did not. Thus, at the time counsel transmitted the additional evidence to the ALJ, the record was closed and he had been so advised. Under these circumstances, the 2005

7

lumbar spine MRI report was not a part of the record before the ALJ.  See 20 C.F.R. § 404.953(a)("The administrative law judge must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record."); Lindsey v. Astrue 2010 WL 3703292, *5 (W.D.Pa. Sep. 14, 2010)("The closing of the record is important because 'at some point in time, there must be a definite record upon which the [ALJ] can make a decision.'")(citations omitted). After the ALJ issued his written decision – providing a detailed summary of all of the medical evidence of record and omitting any reference to the 2005 lumbar spine MRI – plaintiff appealed the decision to the Appeals Council.  The ALJ's notice of decision advised plaintiff and, by copy of the notice, his attorney, "You should submit any new evidence you wish to the Appeals Council to consider **with** your request for review."  (R. 10)(emphasis in original).  The Commissioner's regulations provide that a claimant may "request and receive copies or a statement of the documents or other written evidence upon which the hearing decision . . . was based and a copy or summary of the transcript of oral evidence" from the Appeals Council (20 C.F.R. § 404.974).  However, although plaintiff's counsel requested a copy of the hearing recording (R. 191), he did not request copies of or a statement of the "documents or other written evidence" upon which the ALJ's decision was based.  (See R. 1-9, 189-91).  In its September 26, 2008 letter forwarding the requested duplicate hearing recording to plaintiff's attorney, the Appeals Council advised him that he could submit additional evidence within twenty-five days of the date of the letter.  (R. 6).  However, plaintiff did not submit the MRI report to the Appeals Council (see R. 4), apparently assuming – as he does here – that the MRI report was a part

of the record before the ALJ.  (See R. 1-9, 189-91).

Because the record before the ALJ was closed when plaintiff submitted the MRI report to the ALJ, the MRI report was not a part of the record at that level of review.  Since plaintiff did not provide the MRI report to the Appeals Council, it did not become a part of the administrative record now before the court for review.[6]  Accordingly, even if plaintiff's counsel had attached the 2005 MRI to his brief, the court could not have considered it – as both parties have argued that it should do[7] – in assessing the Commissioner's decision for reversible error pursuant to sentence four of 42 U.S.C. § 405(g). See Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007)("Sentence six of section 405(g) provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court[.]").[8]

## Plaintiff's Daily Activities

---

[6] Because the record before the ALJ was closed, the evidence plaintiff submitted to the ALJ's office – again assuming the submission occurred as represented in plaintiff's brief – did not become a part of the record before the Appeals Council automatically. See 20 C.F.R. § 404.976(b)(1)("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to *it* which relates to the period on or before the date of the administrative law judge hearing decision.")(emphasis added).

[7] The Commissioner argues that the MRI result is not inconsistent with the ALJ's findings, that "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[,]'" and that "the failure to discuss specific evidence does not mean that it was not considered." (Commissioner's brief, pp. 10-12)(citations omitted).

[8] The ALJ found that plaintiff suffers from a severe impairment of spinal stenosis (R. 15), and determined, in accordance with applicable law, that the opinion of the consultative physical examiner as to plaintiff's functional limitations is entitled to substantial weight (R. 26).  Due to other evidence of record, he found plaintiff to be more limited than did the consultative examiner.  Thus, it is unlikely that the MRI report – which, according to plaintiff's counsel, confirms that plaintiff suffers from "Moderate Spinal Canal Stenosis at L4-L5 due to Discogenic Disease" – would have resulted in a sentence four reversal, even if plaintiff had submitted the MRI report to the Appeals Council.

Plaintiff's remaining argument is that the ALJ erred by discrediting his testimony "due to his ability to perform minimal daily activities." (Plaintiff's brief, pp. 9, 12-13). The ALJ found that plaintiff's testimony regarding his limitations was not fully credible because it was inconsistent with the objective signs and physical findings of record (giving substantial weight to the opinions of Dr. Combs and Dr. Renfro), there were no diagnostic studies demonstrating abnormalities that might cause such severe symptoms, and because plaintiff's daily activities are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. (R. 25-26). The ALJ cited and summarized plaintiff's hearing testimony regarding his activities – plaintiff testified that he helps his mother with household chores – including doing laundry and cutting the grass – cleans his room and makes his bed, and that he occasionally mops, vacuums, and goes shopping. He further testified that he watches television, giving it is "undivided attention" for two to three hours, and that he writes notes, checks his e-mail, pays his mother's bills on-line (R. 26, 47-49). Plaintiff also testified that "being on [his] feet a lot ... walking around and everything" makes his leg discomfort worsen and that he is most comfortable in a recliner with his feet up. (R. 50). He testified that he breaks his chores up, stopping and going back to the recliner when his back and legs are bothering him. (R. 51).[9] The court notes, again, that the ALJ did not

---

[9] In a physical activities questionnaire he completed in connection with his application, plaintiff reported that he could walk his dog around the block, drive short distances (less than two miles) to do errands for his parents like pay bills and go to the Dollar Store, and that he is able to sit for an "unlimited" amount of time but needs assistance getting up if he sits for more than a half hour. He stated that he can lift no more than 25 pounds, and that he can perform household chores if he paces himself, and needs assistance "only if it requires heavy lifting like mov[]ing furniture or flipping the mat[t]ress." (R. 148-54).

10

find plaintiff's testimony to be completely incredible. Rather, he credited it to the extent that plaintiff has moderate pain and cannot perform work exceeding the exertional requirements of sedentary work, with additional nonexertional physical and mental limitations. (R. 23). Sedentary work requires walking and standing only occasionally and occasional lifting or carrying of items weighing no more than ten pounds. See 20 C.F.R. §§ 404.1567(a), 416.967(a). The ALJ's conclusion that plaintiff's daily activities are inconsistent with the performance of even sedentary work is supported by substantial evidence.

Additionally, plaintiff's daily activities were not the only reason articulated by the ALJ for discounting his testimony. As plaintiff notes, the ALJ further reasoned that "there are no diagnostic studies demonstrating abnormalities that might cause such severe symptoms" as claimed by the plaintiff. (R. 25). In objecting to this stated rationale, plaintiff points only to the 2005 MRI report which, as discussed above, is not in the record. Finally, the ALJ further relied on examination findings of record, giving substantial weight to the findings of the consultative examiners. Plaintiff does not discuss these findings, again relying only on the MRI. The examination findings support the ALJ's credibility determination. For example, Dr. Combs noted no significant limitation of motion in plaintiff's back, a normal gait, 5 of 5 strength of major muscle groups, no assistive device, no back spasm or guarding, and full range of motion of the joints of all extremities. The reasons articulated by the ALJ for discounting plaintiff's testimony of pain and other subjective symptoms are both adequate and supported by substantial evidence of record, and plaintiff's arguments to the contrary are without merit.

11

"Sentence Six" Remand

Finally, because plaintiff did not file the 2005 lumbar spine MRI report in this court, he is not entitled to a "sentence six" remand on the basis of the report. Plaintiff's counsel clearly intended to do so, and the court has considered whether to exercise its discretion to permit plaintiff the opportunity to file the exhibit now. The court declines to do so, however, because – again assuming that the MRI report is as represented in plaintiff's brief – it would not result in a "sentence six" remand on the facts of this case. To obtain a "new evidence" remand pursuant to sentence six, plaintiff must show that "'(1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level.'" Vega v. Commissioner of Social Security, 265 F.3d 1214, 1219 (11th Cir. 2001).

The MRI report – according to plaintiff – is dated in May 2005, ten months before plaintiff filed the present claims for disability, nearly three years before the administrative hearing and ALJ decision, and over three years before the Appeals Council closed its record on review. (See R. 6, 29, 30, 64, 65). While it may be "noncumulative," it is not "new."

Additionally, plaintiff has not shown good cause for his failure to submit the MRI report at the administrative level. By letter dated October 9, 2007, over six months before the administrative hearing, another ALJ at the Montgomery Office of Disability Adjudication and Review advised plaintiff's counsel that plaintiff's file was ready for review and that counsel could examine the file by contacting the office by telephone or fax at least 24 hours

before the planned review. (R. 92). Additionally, on March 5, 2008, over six weeks before the hearing, the ALJ assigned to determine plaintiff's case sent a Notice of Hearing to the plaintiff, with a copy to his counsel. The notice provided the date, time and location for the hearing. It also included the following paragraph:

**You may Submit Additional Evidence And Review Your File**

> If there is more evidence you want to submit, get it to me right away. If you cannot get the evidence to me before the hearing, bring it to the hearing. If you want to see your file before the date of the hearing, call this office.

(R. 103)(emphasis in original). At the hearing, plaintiff's counsel did not object to any of the existing exhibits as incomplete. After plaintiff's counsel made an opening statement, the ALJ and counsel had the following exchange:

> ALJ: Okay. All right, counsel, have you had the opportunity to review the exhibits in this case?
>
> ATTY: I have, Your Honor.
>
> ALJ: Do you have any objection to the admissibility of any of these documents?
>
> ATTY: I have none, Your Honor.
>
> ALJ: All right. Seeing no objection, what has been previously electronic[ally] marked as Exhibits 1 through 2A, 1 through 14B, 1 through 4D, 1 through 12E, and 1 through 18F for identification are hereby admitted into evidence.

(R. 35-36).

Plaintiff's counsel states that he submitted the MRI report the day following the hearing because, "after a thorough review of the hearing file provided at the hearing, it was

discovered that the MRI report was lacking therein[.]" (Plaintiff's brief, p. 11).  However, plaintiff's counsel had the opportunity to review the exhibits before the hearing, he represented to the ALJ that he had the opportunity to review them, and he asserted no objection to their admission.  His belated discovery that the MRI report was not in the hearing file does not constitute good cause for his failure to submit it before the ALJ closed the record.  Additionally, plaintiff cannot establish good cause for his failure to submit the 2005 MRI to the Appeals Council because, as set forth above: (1) the exhibit was submitted to the ALJ after the ALJ had stated, during the hearing, that the record was closed; (2) plaintiff failed to ascertain whether the belatedly submitted MRI report was included in the record by obtaining a statement of or copies of the documentary evidence upon which the ALJ's decision was based from the Appeals Council, as the Commissioner's regulations allow him to do; and (3) the ALJ's decision notice and subsequent correspondence from the Appeals Council advised plaintiff and his attorney of his right to submit evidence for the Appeals Council's consideration.

In summary, plaintiff is not entitled to sentence six remand on the basis of the 2005 MRI report because he did not provide it to this court.  The court declines to exercise its discretion to allow plaintiff to supplement the record before this court because, even if plaintiff were to file the 2005 lumbar spine MRI, he cannot demonstrate that he is entitled to a "new evidence" remand pursuant to sentence six of 42 U.S.C. § 405(g) because the evidence is not "new" and because he cannot establish good cause for his failure to submit the evidence during administrative processing of his case.

**CONCLUSION**

Upon review of the administrative record before the court, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law and that it is, accordingly, due to be affirmed. The court further concludes that plaintiff has not demonstrated that he is entitled to remand pursuant to sentence six of 42 U.S.C. § 405(g). A separate judgment will be entered.

DONE, this 14th day of March, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE